UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PATRICIA IPAVEC CLARKE and
TOWNSEND CLARKE,

                Plaintiffs,

v.

PEEK 'N PEAK RECREATIONS, INC.,

                Defendant.

**REPORT AND RECOMMENDATION**

05-CV-595A(M)

---

This action was referred to me by Hon. Richard J. Arcara, to hear and report in accordance with 28 U.S.C. §§636(b)(1)(A), (B) and (C) (Dkt. #31). Before me is the motion of defendant Peek 'N Peak Recreation Inc. ("Peek 'N Peak") for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. #34). For the following reasons, I recommend that Peek 'N Peak's motion be DENIED.

## BACKGROUND

Plaintiffs commenced this action on August 19, 2005, seeking to recover for personal injuries allegedly sustained by plaintiff Patricia Ipavec Clarke in a collision with another skier after disembarking from a chairlift at the Peek 'N Peak ski resort on February 16, 2003 (Dkt. #1). Ms. Clarke, a self-described intermediate level skier, had skied at Peek 'N Peak on more than twenty occasions, and had ridden the chairlift "ten or more times" (Dkt. #39, Ex. A pp. 51, 54).

She testified that as the chairlift reached the top of the ski hill, she "put the bar up and [her] ski tips up . . . . and as soon as [she] stood up, [she] saw that there were children on the ramp" (Id. at pp. 85, 92). There were two groups of children on the ramp. The first group of two

or three children were standing in the center of the unloading ramp approximately halfway to the bottom of the approximately 23 foot long ramp (Id. at pp. 86-7, 90; Ex. F). The second group of three or four children were "scattered" behind the first group (Id. at 90). Believing that there was no way to avoid the children, Ms. Clarke attempted to straddle a five-year-old girl and pick her up by the waist, but fell in the process, injuring her leg (Id. at pp. 85, 97-8, 102-8).

Following the completion of pretrial discovery, Peek 'N Peak filed this motion for summary judgment, arguing that, as a matter of law, Ms. Clarke is deemed to have assumed the risk of her injuries, thereby negating plaintiffs' right to recover in this action (Dkt. #35).

## DISCUSSION AND ANALYSIS

A.  **Summary Judgment Standard**

The standard to be applied on a motion for summary judgment in this Circuit is well settled. " 'Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.] Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party.' " Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003) (quoting Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002)).

B.  **Does the Assumption of Risk Doctrine Bar Plaintiffs' Claim as a Matter of Law?**

While conceding that "this case is rife with factual disputes" and "that the lift attendant could have stopped the lift in the conditions described by plaintiff and the collision would have been avoided if he had" (Dkt. #35, pp. 2, 4), Peek 'N Peak argues that "collisions with other skiers - - even if the ski area could have feasibly provided safer conditions - - are an assumed risk of the sport of downhill skiing, entitling Peek 'N Peak to summary judgment as a matter of law" (Id., p. 2).

The "assumption of risk" doctrine was extensively discussed by the New York Court of Appeals in Morgan v. State of New York, 90 N.Y. 2d 471 (1997). In Morgan, the Court recognized that "by engaging in a sport or recreational activity, a participant consents to those commonly appreciated risks which are *inherent* in and arise out of the nature of the sport generally and flow from such participation . . . . Consequently, for purposes of determining that extent of the threshold duty of care, . . . inherency is the sine qua non". Id. at 484 (emphasis added). The Court cautioned, however, that "participants will not be deemed to have assumed . . . unreasonably increased risks ". Id. at 485 (citations omitted). "Therefore, in assessing whether a defendant has violated a duty of care . . . , the applicable standard should include whether the conditions caused by the defendants' negligence are unique and created a dangerous condition over and above the usual dangers *that are inherent* in the sport." Id. (emphasis added).

Thus, I may grant this motion only if I can conclude, as a matter of law, that the risk of colliding with another skier on the chairlift exit ramp was inherent in the sport of downhill skiing. In considering this issue, Peek 'N Peak "recognizes that the case of Morgan v. Ski Roundtop, 290 A.D. 2d 618, 736 N.Y.S. 2d 135 (3d Dept. 2002) is factually similar to the one at

bar" (Dkt. #35, p. 9). Under circumstances virtually identical to those of this case, the court in Morgan denied the defendants' motion for summary judgment, reasoning as follows:

> "[T]here is undoubtedly some risk of injury inherent in entering, riding and exiting from a chairlift at a ski resort. However, we hold that the latter is not of such magnitude as to eliminate all duty of care and thereby insulate the owner from claims of negligent supervision and training of the lift operator or negligent maintenance and operation of the lift itself since such negligence may unduly enhance the level of the risk assumed (see, Morgan v. State of New York, supra, at 485, 662 N.Y.S. 2d 421, 685 N.E. 2d 202; Jenks v. McGranaghan, 32 A.D. 2d 989, 989-990, 299 N.Y.S. 2d 228). An issue of fact exists concerning whether or not the operator on the day in question was properly trained. Moreover, defendants' lift superintendent testified that if a skier falls on the unload ramp, defendants' policy requires the chairlift operator to stop the lift unless, in the judgment of the operator, an exiting skier has a "clear path" to maneuver around the fallen individual. Whether the operator was negligent in exercising his discretion to not stop the lift under the circumstances of this case should be resolved by a jury." 290 A.D. 2d at 620.

Peek 'N Peak argues that I am "free to disregard" the rationale of this case if I am "convinced by other persuasive data that the highest court of the state would decide otherwise". (Dkt. #35, p. 10, citing Dibella v. Hopkins, 403 F. 3d 102, 112 (2d Cir. 2005)). In urging me to disregard the Third Department's denial of summary judgment in Morgan, Peek 'N Peak suggests that "the decision does not comport with the New York Court of Appeals' precedent on the doctrine of assumption of risk, and was overruled *sub silentio* by the Court of Appeals" in Bennett v. Kissing Bridge, 17 A.D. 3d 990 (4th Dept. 2005), aff'd. 5 N.Y. 3d 812 (2005) (Dkt. #35, p. 10).

However, the facts of Bennett are significantly different from those of this case. In Bennett, the court granted summary judgment because "the accident was caused when plaintiff 'slid on ice,' fell and hit a tree, all of which are inherent risks in the sport of downhill skiing". 17

A.D. 3d at 990. That decision can in no way be interpreted as suggesting that summary judgment should be denied under vastly different facts, such as existed in Morgan v. Ski Roundtop and in the case at bar. Indeed, far from being critical of the Third Department's rationale in Morgan v. Ski Roundtop, the Fourth Department cited that decision with approval as a basis for denying summary judgment in Jacobs v. Kent, 303 A.D. 2d 1000, 1001 (4th Dept. 2003).

Nor is the Third Department's holding in Morgan v. Ski Roundtop inconsistent with the rationale of Morgan v. State of New York, supra, in which the Court of Appeals held that the "assumption of risk" doctrine does not apply to risks which are "over and above the usual dangers that are inherent in the sport". 90 N.Y.2d at 485 (emphasis added). The Third Department's conclusion in Morgan v. Ski Roundtop that a lift attendant's negligence in operating a chairlift may "unduly enhance the level of risk assumed" by skiers (290 A.D. 2d at 620) is completely in accord with this reasoning.[1]

Thus, while there may be some inherent risk of injury in the sort of skiing, the risk here, as in Morgan v. Ski Roundtop, supra, was enhanced beyond what ordinarily would be assumed by a skier. The chairlift operator's failure to slow or stop the chairlift not only was in violation of Peek 'N Peak's own policy,[2] but it also violated New York State regulations

---

[1] The remaining cases relied upon by Peek 'N Peak are equally distinguishable, insofar as they pertain to inherent risks such as terrain variations (see Painter v. Peek 'N Peak Recreation, Inc., 2 A.D. 3d 1289, 1290 (4th Dept. 2003); Hyland v. State, 300 A.D. 2d 794, 794 (3d Dept. 2002); Bono v. Hunter Mountain Ski Bowl, Inc., 269 A.D. 2d 482, 482 (3d Dept. 2000); Sontag v. Holiday Valley, Inc., 38 A.D. 3d 1350, 1351 (4th Dept. 2007) (holding that the plaintiff, an experienced skier "was sufficiently aware of the inherent risks of downhill skiing, including the risk of injury caused by moguls or bumps in the terrain regardless of whether they could be seen")); or to collisions with other skiers while skiing on the slope itself (see Gern v. Basta, 26 A.D. 3d 807, 809 (4th Dept. 2006) and Zielinski v. Farace, 291 A.D. 2d 910, 911 (4th Dept. 2002)).

[2] See Dkt. #39, Declaration of Craig Watson, Esq., Ex. D, p. 18 ("When [lift attendants] spot [problems] they stop (or slow) the lift"; "Looking at the area beyond the unloading ramp . . . helps lift attendants spot pile-ups of people and allows you to ask guests to move away from the unloading

governing fixed-grip aerial lift operations, which mandate that if "a condition develop[s] in which continued operation might endanger a passenger, the attendant shall stop the aerial lift immediately and advise the operator". 12 N.Y.C.R.R. §32-4.56(d).

The risks inherent in skiing are "not of such magnitude as to eliminate all duty of care". Morgan v. Ski Roundtop, supra, 290 A.D. 2d at 620. The critical question is whether Peek 'N Peak's alleged "negligence . . . unduly enhance[d] the level of risk assumed". Id. In this regard, plaintiff's expert, James S. Wickersham, P.E., opined not merely that Peek 'N Peak was negligent (Dkt. #39, ¶11), but also that this negligence created a unique condition presenting dangers in excess of the those inherent in the sport, stating that it "was entirely reasonable for [plaintiff] to anticipate that the lift attendant would stop the lift if there was the potential for an incident to occur. A patron at a ski resort should reasonably expect that the lift attendants would not permit skiers to exit under circumstances where individuals have congregated on the exit ramp . . . ." (Id. at ¶12).

Peek 'N Peak does not dispute that, of all the authorities which it cites, the facts at issue in Morgan v. Ski Roundtop, supra, are most similar to those of this case. Because I am not "convinced . . . that the highest court of the state would decide otherwise" than did the Third Department in that case (Dibella, supra), I conclude that the question of whether plaintiff assumed the risk of her injuries under the circumstances of this case is one of fact, not of law, and therefore cannot be resolved on a motion for summary judgment.

---

area"); Ex. E, pp. 58-9, 114 (Bradley Gravink, Peek 'N Peak's General Manager, testified that he would have expected the lift attendant to take some action if an individual was standing on the unloading ramp).

## CONCLUSION

For these reasons, I recommend that Peek 'N Peak's motion for summary judgment (Dkt. #34) be DENIED. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning

<u>objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.</u>

**SO ORDERED.**

DATED: November 16, 2007

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge